**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marisol Rosales, | No. CV-25-03244-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Marisol Rosales's appeal from the Commissioner of the Social Security Administration's ("SSA," "Commissioner," or "Defendant") denial of Social Security benefits. (Doc. 8-3). The appeal is fully briefed (Docs. 11–13), and the Court now rules.

## I.    BACKGROUND

### A.  Factual Overview

Plaintiff was 44 years old on her alleged disability onset date of November 13, 2021. (Doc. 8-3 at 40, 53). She has at least a high school education and a history of past relevant work as an order filler. (Doc. 8-3 at 53). On November 21, 2021, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning November 13, 2021. (Doc. 8-3 at 40). On October 3, 2023, Plaintiff testified with the assistance of an interpreter at a telephonic hearing held before an Administrative Law Judge ("ALJ"). (Doc. 8-3 at 40). The hearing was continued to allow the claimant to attend a consultive examination. (Doc. 8-3 at 40). On July 16, 2024, Plaintiff again testified

with the assistance of an interpreter at a supplemental telephonic hearing. (Doc. 8-3 at 40). On August 16, 2024, the ALJ denied Plaintiff's claim. (Doc. 8-3 at 55). The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the agency's final decision. (Doc. 8-3 at 2). Plaintiff filed the present appeal following this unfavorable decision. (Doc. 1).

### B. The SSA's Five-Step Evaluation Process

To qualify for social security disability insurance benefits, a claimant must show that he "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do his previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. See *id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities," and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or

equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to Step Four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is his ability perform physical and mental work activities "despite [his] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* § 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "his past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past five years that was substantial gainful activity and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1)(i). If the claimant has the RFC to perform his past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the final step, the ALJ considers whether the claimant "can make an adjustment to other work," considering his RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the claimant is disabled. *Id.*

**C. The ALJ's Application of the Factors**

Here, at Step One, the ALJ concluded that Plaintiff did not engage in substantial gainful activity since her alleged onset date of November 13, 2021. (Doc. 8-3 at 43).

At Step Two, the ALJ determined that Plaintiff had the following severe impairments: "fibromyalgia, obesity, status post lumbar laminectomy and fusion, lumbar and cervical degenerative disc disease, cervical spondylosis, sacroiliac joint arthropathy, Sjogren's syndrome with inflammatory arthritis, lateral epicondylitis, sacroiliac joint

- 3 -

arthropathy, and chronic pain syndrome." (Doc. 8-3 at 43).

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 8-3 at 44). The ALJ then found that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except from November 13, 2021, to December 27, 2023, the claimant could lift and carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk with normal breaks 6 hours and sit 6 hours with normal breaks in an 8-hour day. She could occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolds. She could frequently balance, and occasionally stoop, kneel, crouch, and crawl. Beginning on December 27, 2023, the claimant can lift and carry 11 to 20 pounds frequently and carry up to 10 continuously, sit 7 hours (6 hours at a time), stand 4 hours (3 hours at a time), walk 5 hours (3 hours at a time), frequently reach, handle, push and pull, occasionally climb ladders or scaffolds, stoop, crouch, and crawl. She can frequently climb ramps and stairs and kneel.

(Doc. 8-3 at 44).

At Step Four, the ALJ established that Plaintiff was unable to perform any past relevant work. (Doc. 8-3 at 52). At Step Five, considering Plaintiff's age education, work experience, and RFC, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform.

## II.    LEGALS STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). "Substantial evidence" is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). It involves "more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). This Court must consider the record in its entirety, "weighing both the evidence

that supports and evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. See *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [courts] must defer to the ALJ's conclusion."). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III.  DISCUSSION

Plaintiff argues that the ALJ committed harmful error by (1) rejecting Plaintiff's symptom testimony, and (2) rejecting the medical opinion of treating providers Dr. Ravi Bhalla and PA-C Paige Nelson. (Doc. 11 at 1).

### A. Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ erred in failing to provide specific, clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. (Doc. 11 at 14). Conversely, Defendant argues the ALJ's assessment of Plaintiff's subjective symptom testimony was reasonable and supported by substantial evidence. (Doc. 12 at 4–5).

1. Legal Standard for Evaluating Symptom Testimony

In assessing the credibility of a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir.

2007) (internal citation and quotation marks omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen*, 80 F.3d at 1281).

The "specific, clear, and convincing" standard is satisfied where the "ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). To be sufficiently specific, the ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Moreover, "[t]he evidence upon which the ALJ relies must be substantial." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "If the ALJ's credibility finding is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

Factors an ALJ may consider when determining credibility include: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.* at 1163 (quoting *Smolen*, 80 F.3d at 1284).

### 2. The ALJ's Evaluation of Plaintiff's Symptom Testimony

The ALJ summarized Plaintiff's testimony at the initial hearing as follows:

> The claimant reported she is single with three adult children, and currently lives with her brother and her children. Her daughter receives SSI benefits. She stated she has no income of her own. The claimant reported she completed the 12th grade (high school). She has no vocational training. She reported she has a driver's license and drives probably two times a week. She stated she has not worked since November 13, 2021. She stopped work because she could no longer take her back pain. Her back pain was too great, she was diagnosed with spinal stenosis and was going to have surgery because her back pain was unbearable. She was working at PetSmart warehouse as an order filler and selector. Her job involved walking all day long. She had to lift about 10 pounds. She has fibromyalgia and spinal stenosis. She has seen doctors regularly since the alleged onset date. To this day, she is being seen and receiving injections in her lower back and she has

> pain in her neck. She has not been hospitalized since the alleged onset date, other than when she had spine surgery. She had surgery on December 17, 2021. She was treated with physical therapy twice after surgery. She does not use a cane or other assistive device but uses a back brace. She takes pain medications regularly. The claimant reported she was able to sit for only 10 minutes at a time, but then has to walk or lie down, walk about 15 minutes at a time. For example, if she goes to the mall, she gets very tired and has to sit down. She reported she [is] able to stand between 10 to 20 minutes at a time and that she struggles to lift a gallon of milk. The claimant stated she had not been treated for any mental health problems. She does not use alcohol or non-prescription drugs. She is seeing a doctor for migraines. The claimant further testified she has migraines two to three times a week sometimes four days a week lasting half a day.

(Doc. 8-3 at 45).

The ALJ summarized Plaintiff's testimony at the supplemental hearing as follows:

> Since the last hearing, she has not been hospitalized or had any surgical procedures. She has been seeing doctors regularly. Since the last hearing, she has received three to four injections. She takes medications regularly. She had not been using a cane or other assistive device since the last hearing. She is still taking methotrexate. Her methotrexate dosage increased from 25 mg to 50 mg because [] her migraine headaches are continuing. She experiences headaches sometimes three times a week and sometimes four times a week.

(Doc. 8-3 at 46).

Plaintiff alleged that spinal stenosis and fibromyalgia limit her ability to work, and that she stopped working because of her back pain. (Doc. 8-3 at 45, 103). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms. (Doc. 8-3 at 46). However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical evidence and other evidence in the record. (Doc. 8-3 at 46).

The Court finds that the ALJ gave specific, clear and convincing reasons for discounting Plaintiff's testimony. Furthermore, the ALJ identified the testimony she found not credible and explained what evidence undermined the testimony. *Holohan*, 246 F.3d at 1208. Specifically, the ALJ found that Plaintiff's statements regarding the severity and limiting effects of her pain were inconsistent with the medical records, explaining:

- 7 -

> [T]he balance of treatment records . . . generally show the claimant obtained benefit from lumbar spine surgery and the medication regimen does help keep the pain symptoms more tolerable and improve functional ability/capacity with no side effect. (Exhibits 6F/3, 5; 7F/8; 10F/12, 18, 24, 32, 38, 44, 50, 61; 13F/12, 19, 25, 31, 37; 15F/353, 368, 378, 388, 408, 418; 23F/23F/2, 11, 20, 29, 38, 47, 58, 67, 76, 85, 96, 105, 116).

(Doc. 8-3 at 48). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Smartt*, 53 F.4th at 499 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008)). Additionally, an ALJ may discount a claimant's testimony based on effective treatment. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

Regarding the improvements after Plaintiff's lumbar spine surgery, the ALJ cited to treatment records from after Plaintiff's spinal surgery that showed gradual improvement after the surgery. (Doc. 8-3 at 46–47). The ALJ noted that six months after the surgery, Plaintiff reported intermittent stiffness but "overall she is extremely pleased with the outcome of her surgery. She denies bilateral lower extremity pain. She has completed physical therapy as prescribed. She is beginning to resume her regular activities without restrictions." (Doc. 8-3 at 47; Doc. 8-8 at 66).

Regarding the effectiveness of Plaintiff's medications, the ALJ noted that Plaintiff testified that medication helps with her pain but makes her very sleepy. (Doc. 8-3 at 46). The ALJ found that "this is not corroborated by the medical record," which shows that Plaintiff "generally tolerates medication with no side effects" and was typically "alert and oriented with no narcotic intoxication noted." (Doc. 8-3 at 46). The ALJ provided record citations to specific pain management records that contradicted Plaintiff's statements:

> Pain management records dated November 22, 2021, to August 16, 2023, generally indicate that the medication regimen does help keep the pain symptoms more tolerable and improve functional ability/capacity and she denies any side effects to the medications and is tolerating them well. (Exhibits 10F/12, 18, 24, 32, 38, 44, 50, 61; 13F/12, 19, 25, 31, 37; 15F/353, 368, 378, 388, 408, 418; 23F/127) Similarly, pain management records dated September 11, 2023, to May 29, 2024, generally

reveal that the claimant reported improvement in functional capacity, and/or activity tolerance, and/or less medication requirement or otherwise indicate that medication regimen does help keep the pain symptoms more tolerable and improve functional capacity and she generally denied side effects to the medications. (Exhibit 23F/2, 11, 20, 29, 38, 47, 58, 67, 76, 85, 96, 105, 116).

(Doc. 8-3 at 47*).*

Additionally, an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter*, 504 F.3d at 1040. "Even if the claimant experiences some difficulty or pain, her daily activities 'may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.'" *Smartt*, 53 F.4th at 499 (quoting *Molina*, 674 F.3d at 1113). Here, the ALJ explained that Plaintiff's activities of daily living were not "as limited as would be expected given her complaints of disabling symptoms and limitations." (Doc. 8-3 at 48). The ALJ acknowledged that "travel and disability are not necessarily inconsistent," but concluded that "in this case, the claimant's ability to travel to Mexico regularly strongly suggests she is not as limited as alleged." (Doc. 8-3 at 48).

Moreover, the ALJ found the medical opinions of Dr. Hunter and Dr. Braverman persuasive because those medical opinions were consistent with and supported by the record. (Doc. 8-3 at 52). The ALJ adopted Dr. Braverman's opined limitations in formulating Plaintiff's RFC from November 13, 2021 to December 27, 2023. (Doc. 8-3 at 44, 52). The ALJ adopted Dr. Hunter's opined limitations in formulating Plaintiff's RFC beginning on December 27, 2023. (Doc. 8-3 at 44, 52). Therefore, the Court finds that in discounting Plaintiff's testimony, the ALJ gave specific, clear and convincing reasons that were supported by substantial evidence.

Plaintiff argues that the ALJ "provided a general medical summary, but failed to connect anything specific in the medical record to a specific inconsistency" with Plaintiff's testimony. (Doc. 11 at 14). Plaintiff's argument fails because, as explained above, the ALJ found Plaintiff's testimony regarding the severity of her pain and limitations were inconsistent with and not supported by medical treatment records, which indicate that

- 9 -

Plaintiff's symptoms were improved by her surgery and medications.

Plaintiff additionally argues that the ALJ "failed to provide a specific, clear and convincing reason supported by substantial evidence to reject Rosales's chronic pain testimony" related to her fibromyalgia. (Doc. 11 at 15). However, as explained above, the ALJ found that Plaintiff's "ability to travel to Mexico regularly strongly suggests she is not as limited as alleged." (Doc. 8-3 at 48). The ALJ pointed to a medical treatment note that indicated Plaintiff had not started physical therapy "due to recent travel to Mexico." (Doc. 8-3 at 48; Doc. 8-12 at 197). The ALJ also noted that a consultative examination "was rescheduled because she was reportedly out of town." (Doc. 8-3 at 48; Doc. 8-7 at 101). The ALJ reasonably found that Plaintiff's frequent travels are inconsistent with her testimony regarding the severity and limiting effects of her chronic pain.

Plaintiff also argues that the ALJ cherry-picked the medical record with regards to Plaintiff's improvement with medication and surgery. (Doc. 11 at 15–18). However, the ALJ discussed medical reports of ongoing pain and took those into account in formulating Plaintiff's RFC. (Doc. 8-3 at 47). Moreover, as previously mentioned, in addition to medical records indicating improvement with treatment, the ALJ relied on Plaintiff's activities of daily living and the medical opinions of Dr. Hunter and Dr. Braverman in discounting Plaintiff's testimony regarding the severity of her pain and limitations. Therefore, the ALJ provided specific, clear and convincing reasons for discrediting Plaintiff's testimony.

Finally, Plaintiff argues that her testimony is not inconsistent with her activities of daily living. (Doc. 11 at 18–19). Specifically, Plaintiff argues that the ALJ failed to explain how travel was inconsistent with Plaintiff's testimony considering Plaintiff may have gotten accommodations. (Doc. 11 at 19). However, Plaintiff did not testify that she received an accommodation. The ALJ reasonably found that Plaintiff's frequent travels contradict her testimony that she could only sit for ten minutes at a time due to pain and that she was too tired to complete simple tasks.

Therefore, the Court finds that the ALJ provided specific, clear and convincing

reasons supported by substantial evidence for rejecting Plaintiff's testimony regarding the severity and limiting effects of her symptoms.

### B. Medical Opinions

Plaintiff argues that substantial evidence did not support ALJ's rejection of the medical opinions of treating providers Dr. Ravi Bhalla and PA-C Paige Nelson because the ALJ failed to discuss the supportability and consistency factors with citation to substantial evidence. (Doc. 11 at 20). Plaintiff asserts that this was not harmless error because the vocational expert testified that the limitations assessed by these providers would preclude competitive employment. (Doc. 11 at 24–25). Conversely, Defendant argues that the ALJ's assessment of the medical opinions was reasonable and supported by substantial evidence. (Doc. 12 at 8–9).

#### 1. Legal Standard

In evaluating medical opinions, the Ninth Circuit previously employed the "treating physician rule," which distinguished between treating physicians, examining physicians, and non-examining physicians, generally giving the greatest weight to the opinions of treating physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). However, in March 2017, the SSA amended their regulations to abrogate the treating physician rule, among other changes, and all claims filed on or after March 27, 2017, must adhere to these amended regulations. *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, at *3 (D. Ariz. Mar. 2, 2020) (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017)); *see Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022). The amended regulations state that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

Moreover, the Ninth Circuit has determined that in cases governed by the amended regulations, the "specific and legitimate" standard is no longer applicable, meaning an ALJ

is no longer required to articulate "specific and legitimate reasons" for rejecting a treating physician's opinion. *Woods*, 32 F.4th at 791–92. Instead, the amended regulations provide that in considering all medical opinions, an ALJ should consider several enumerated factors, including supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c); *Alonzo*, 2020 WL 1000024, at *3. Supportability and consistency are the "most important factors," and the ALJ must articulate how he considered supportability and consistency in determining how persuasive a medical opinion is. 20 C.F.R. § 404.1520c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* (quoting 20 C.F.R. § 404.1520c(c)(2)). If the ALJ finds that two or more medical opinions differ slightly but are equally well-supported and consistent with the record, then the ALJ must also articulate how he considered the other enumerated factors. 20 C.F.R. § 404.1520c(b)(3).

### 2. Dr. Ravi Bhalla

Plaintiff argues that the ALJ erred in rejecting Dr. Bhalla's medical opinion. (Doc. 11 at 21). The ALJ summarized Dr. Bhalla's opinion as follows:

> On August 10, 2023, Ravi Bhalla, M.D. completed a Fibromyalgia form. He opined as follows, in part. She does not have the stamina and endurance to work an easy job 8 hours per day 5 days per week (with normal breaks every two hours). She will require a job that permits shifting at will and would need unscheduled breaks. The claimant would likely be absent more than four days per month. (Exhibit 16F).

(Doc. 8-3 at 51). The ALJ found Dr. Bhalla's opinion to be unpersuasive because his opined limitations were vague, unsupported by the record, and inconsistent with the record. (Doc. 8-3 at 51).

Regarding supportability, the ALJ explained:

> In terms of supportability, he completed a checkbox style form with no accompanying narrative, and no significant

- 12 -

explanation as to why the claimant was so limited. Further, Dr. Bhalla provided no significant objective examinations or diagnostic findings within the form to support the restrictions given nor did he cite to any objective documentation or other objective findings to support his opinions other than identifying symptoms, sign, and associated conditions provided within the checkbox form itself and noting 18 tender points.

(Doc. 8-3 at 51).

Plaintiff argues the ALJ should not have discounted Dr. Bhalla's opinion based on the "checkbox style form" because Dr. Bhalla's underlying treatment notes support his opinion. (Doc. 11 at 21). Specifically, Plaintiff argues that "Dr. Bhalla treated [Plaintiff] since 2017 with numerous visits noting consistent symptoms, multiple tender points on examination, and an ordered course of treatment that included medical trials and adjustments for fibromyalgia and inflammation symptoms." (Doc. 11 at 22). However, Plaintiff did not point to anything in the treatment notes where Dr. Bhalla explained how he concluded based on Plaintiff's multiple tender points and course of treatment that Plaintiff "does not have the stamina and endurance to work and easy job." (Doc. 11 at 22; Doc. 8-3 at 51).

Moreover, the ALJ determined that the vagueness of Dr. Bhalla's opinion further indicated that some of his opined limitations were unsupported. Regarding vagueness, the ALJ explained:

[Dr. Bhalla] provided some vague opinions. For instance, he indicated that the claimant would need to sit with legs elevated with prolonged sitting but when asked to specify how high the legs should be elevated and what percentage of time, he stated, "no way to determine". (Exhibit 16F/4) Further, he opined that the claimant had restricted use of the hands, fingers, and arms but again failed to specify to what degree or percentage of an 8-hour working day these would be restricted (Id.).

(Doc. 8-3 at 51).

Plaintiff argues that "Dr. Bhalla's assessment was not vague as it related to [Plaintiff's] need for unscheduled breaks and absences, two limitations that the agency's vocational expert confirmed would preclude work." (Doc. 11 at 22). However, as

explained, the ALJ found that Dr. Bhalla's opinion regarding Plaintiff's need for unscheduled breaks and absences was unsupported by and inconsistent with the record.

Regarding inconsistency, the ALJ explained:

> Dr. Bhalla reports she has frequent and severe headaches, but there is minimal evidence of treatment for headaches in the record and minimal evidence of fatigue that he has reported. The opinions of Dr. Bhalla are inconsistent with the balance of treatment records that generally reveal that the medication regimen does help keep the pain symptoms more tolerable and aids in improving functional ability/capacity. (Exhibits 10F/12, 18, 24, 32, 38, 44, 50, 61; 13F/12, 19, 25, 31, 37; 15F/353, 368, 378, 388, 408, 418; 23F/23F/2, 11, 20, 29, 38, 47, 58, 67, 76, 85, 96, 105, 116). Dr. Bhalla's opinions are not consistent with the claimant's activity including travels to Mexico, as described herein.

(Doc. 8-3 at 51).

Plaintiff argues that Dr. Bhalla's assessment of frequent and severe headaches and fatigue is not inconsistent with the record because the record shows that Plaintiff reported fatigue and headaches and was treated with medication trials for migraines. (Doc. 11 at 22). Plaintiff further argues that improvement in certain symptoms with medication and travels to Mexico did not invalidate Dr. Bhalla's opinion. (Doc. 11 at 22–23).

In determining Plaintiff's severe impairments at Step Two, the ALJ found that Plaintiff's treatment history for migraines "tends to suggest her noted migraines were not at the severity and frequency that she alleged." (Doc. 8-3 at 43). The ALJ acknowledged that even after achieving some improvement from treatment, Plaintiff still complained of getting migraines after treatment. (Doc. 8-3 at 44). Contrary to Plaintiff's assertion, the ALJ considered Plaintiff's treatment history for migraines and nonetheless concluded that "[t]he record does not support a finding that she has experienced migraine headaches with a frequency or severity to result in more than a minimal limitation in her ability to perform work related activity." (Doc. 8-3 at 44). Moreover, the ALJ reasonably concluded that Plaintiff's frequent travels to Mexico are inconsistent with the level of disabling fatigue alleged by Dr. Bhalla. Accordingly, the ALJ did not err in rejecting Dr. Bhalla's opined limitations as inconsistent with the record.

3. PA-C Paige Nelson

Plaintiff argues that the ALJ erred in rejecting PA-C Nelson's opined limitations. (Doc. 11 at 23). The ALJ summarized PA-C Nelson's opinion as follows:

> In a Medical Source Statement (Physical) dated February 8, 2022, Paige Nelson, PA-C, opined as follows, in part. She would experience pain or other symptoms severe enough to constantly interfere with attention and concentration to perform simple tasks. She can sit less than 2 hours in an 8-hour working day and stand/walk less than 2 hours in an 8-hour working day. She must walk every 20 minutes for 5 minutes at a time. She requires a job that permits shifting positions at will and would require unscheduled breaks. She could rarely lift less than 10 pounds, never look down, rarely turn head, and occasionally hold head in static position. She should never twist, stoop, crouch or climb ladders, occasionally climb stairs, and would be able to use hands/fingers/arms 5% of an 8-hour working day for handling, fine manipulations, and reaching. She would likely be absent from work more than four days per month. (Exhibits 4F; 5F).

(Doc. 8-3 at 50). The ALJ found PA-C Nelson's opinion to be unpersuasive because her opined limitations were unsupported by the record, inconsistent with other medical records, and inconsistent with Plaintiff's activities of daily living. (Doc. 8-3 at 50–51).

Regarding supportability, the ALJ explained:

> The opinions of Ms. Nelson are not supported by the weight of treatment records. As noted, the medical record supports that the claimant generally obtained benefit from lumbar surgery. On December 29, 2021, the claimant presented for 2-week post operative appointment status post lumbar laminectomy and fusion and "reports significant improvement in low back pain and bilateral lower extremity pain". (Exhibit 6F/3) On March 16, 2022, 3-months status post laminectomy and fusion from L4-5, she reported continued soreness in her low back and stretching sensation when she bends but "she has begun to resume her regular activities". (Exhibit 6F/5) On June 7, 2022, approximately 6 months status post lumbar laminectomy and fusion, the claimant reported intermittent stiffness but "overall she is extremely pleased with the outcome of her surgery. She denies bilateral lower extremity pain. She has completed physical therapy as prescribed. She is beginning to resume her regular activities without restrictions". (Exhibit 7F/8) Further, Ms. Nelson's opinions are not supported by pain management records that generally reveal that the medication regimen does help keep the pain symptoms more tolerable and aids in improving functional ability/capacity. (Exhibits 10F/12, 18, 24, 32, 38, 44, 50, 61; 13F/12, 19, 25, 31, 37; 15F/353, 368, 378, 388, 408, 418; 23F/23F/2, 11, 20, 29, 38, 47, 58, 67, 76, 85, 96, 105, 116).

- 15 -

(Doc. 8-3 at 50).

Regarding inconsistency with other medical records, the ALJ explained:

> Ms. Nelson's opinions are out of proportion and inconsistent with examinations from her own medical facility. For example, examinations dated December 6, 2021, to February 28, 2022, generally show she was alert, cooperative, and in no acute distress and had intact strength and sensation symmetric throughout, normal lower extremity findings, and normal gait. (Exhibit 15F/114, 120, 126, 131) On exams dated June 23, 2022, to July 5, 2024, the claimant was generally in no acute distress, was awake, alert, had normal motor function, normal sensation, and normal gait. (Exhibit 15F/14, 24, 34, 44, 54, 64, 74, 83, 91, 100; 22F/9, 22, 33, 45, 56, 68; 24F/8, 18).

(Doc. 8-3 at 50–51).

Regarding inconsistency with Plaintiff's activities of daily living, the ALJ explained:

> Ms. Nelson's opinions are inconsistent with the claimant's testimony that suggests a greater degree of functioning than proposed by Ms. Nelson. She testified traveling outside of Maricopa County and affirmed going to Mexico not long ago. The claimant testified traveling to Mexico three weeks ago and was there for one week. She testified also going to Mexico in February of this year. She reported flying when she travels to Mexico. At the supplemental hearing, the claimant also reported going to Mexico in May. The degree of limitations proposed by Ms. Nelson is also not supported by the claimant's Function Report, which also suggests a greater degree of functioning. In a Function Report, the claimant noted that she tries to do household chores but has to sit down after 10 minutes. (Exhibit 3E/2) She indicated playing games on her phone (Id.). The claimant indicated preparing her own meals. (Exhibit 3E/3) She noted being able to clean or sweep/mop for a little bit before she gets tired and has to sit down (Id.). She indicated being able to go out alone and being able to drive. (Exhibit 3E/4) The claimant indicated being able to shop in stores, pay bills, count change, handle a savings account and use a checkbook (Id.). The claimant indicated going to the mall or out to eat with her daughters one time a week. (Exhibit 3E/5) She reported being able to walk ½ mile before stopping to rest. (Exhibit 3E/6) She indicated being able to pay attention for 2 hours and following written and spoken instructions "well" (Id.).

(Doc. 8-3 at 51).

Plaintiff argues that PA-C Nelson's opined limitations were supported by her treatment notes, which indicated that Plaintiff's pain symptoms persisted despite treatment. (Doc. 11 at 23). Plaintiff further argues that PA-C Nelson's opined limitations were not

inconsistent with records of persistent pain. (Doc. 11 at 23). However, the ALJ did not discount Plaintiff's reports of pain; rather, the ALJ considered Plaintiff's continued symptoms of pain and determined that PA-C Nelson's opined limitations were disproportionate to Plaintiff's pain symptoms. The ALJ did not err in finding that PA-C Nelson's opined limitations were unsupported by and disproportionate to Plaintiff's treatment records.

Plaintiff also argues that the ALJ did not explain how Plaintiff's activities of daily living, including travel to Mexico, were inconsistent with PA-C Nelson's opined limitations. (Doc. 11 at 24–25). The Ninth Circuit Court of Appeals has held that an ALJ may validly reject a medical opinion if it is inconsistent with a claimant's daily activities. *See, e.g.*, *Ghanim*, 763 F.3d at 1162; *Carter v. Berryhill*, 738 F. App'x 534, 535 (9th Cir. 2018); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ reasonably concluded that Plaintiff's daily activities, including frequent travels to Mexico, suggest a greater degree of functioning than PA-C Nelson's opined limitations. Therefore, substantial evidence supports the ALJ's conclusion that Plaintiff's daily activities conflict with a limitation to level one reasoning. *See Burch*, 400 F.3d at 680 ("Although the evidence of [the claimant's] daily activities may also admit of an interpretation more favorable to [the claimant], the ALJ's interpretations was rational, and we must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

Plaintiff additionally argues regarding both Dr. Bhalla and PA-C Nelson that the ALJ erred in failing to explain how the record "better supported the agency opinions over [Plaintiff's] treating providers." (Doc. 11 at 24; Doc. 8-3 at 52). However, as discussed previously, the ALJ, not the reviewing court, is responsible for resolving any conflicts or ambiguities within the medical testimony and medical record. *See Andrews*, 53 F.3d at 1039. Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630; *see also Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("[I]f the evidence

can support either outcome, the court may not substitute its judgment for that of the ALJ."). Here, the ALJ determined that the opinion of a consulting examiner conflicted with the opinion of Plaintiff's treating providers. "When there is conflicting medical evidence, the [ALJ] must determine credibility and resolve the conflict." *Thomas*, 278 F.3d at 956–57 (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1989)). The Court must defer to the ALJ's weighing of conflicting medical opinions.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 14th day of April, 2026.

James A. Teilborg
Senior United States District Judge

- 18 -